Syllabus.

---

# Richmond.

## DEVINE v. COMMONWEALTH.

### January 16, 1908.

1. INTOXICATING LIQUORS—*Sales to Several Persons—Election to Prosecute as to one—Evidence of effect on Others—Case at Bar.*—If, upon the trial of a warrant for selling liquor without a license to several persons, the commonwealth elects to prosecute for a sale to one only, it cannot upon that warrant prosecute the accused for selling to any other person, nor prove sales to others in aid of its proof that he was guilty of the offense for which he was being prosecuted; though it may show by others the effect produced upon them by drinking a beverage purchased by them of the accused and bearing the same brand as that for which he is being prosecuted. In the case at bar, the witnesses for the commonwealth were questioned as to sales made to them by the accused, but it is clear, under the facts and circumstances of the case, that the accused was not prejudiced thereby.

2. INDICTMENT—*Statute Containing Exception.*—If an exception to a statute is so incorporated with the enacting clause that the one cannot be read without the other, then the exception must be negatived in any indictment for a violation of the statute; but if the exception be in a substantive clause subsequent to the enacting clause, though in the same section, it is matter of defense to be shown by the defendant.

3. INTOXICATING LIQUORS—*License—Exception in Statute—Cider—Burden of Proof.*—Upon a charge of selling liquor without license in this state, it need not be denied that the liquor sold was pure apple cider, although that is an exception contained in the statute. If it is pure apple cider, that is a matter of defense and comes more properly from the defendant, who has the burden of proof on that question; the exception in the statute being in a substantive clause and not in the enacting clause.

4. INTOXICATING LIQUORS—*Cider—Case at Bar—Analysis—Samples.*—The preponderance of evidence in this case shows that the cider sold

by the defendant did not contain a greater percentage of alcohol than is allowed by the statute, and he should have been acquitted. The guilt or innocence of the accused depended upon the amount of alcohol the cider contained, and, while the correctness of the analyses introduced in evidence is not questioned, there were ample opportunities for tampering with the samples analyzed by the commonwealth before the analysis was made, and the analysis was, therefore, of little probative value.

Error to a judgment of the Circuit Court of Mecklenburg county on a prosecution for selling liquor without a license.

*Reversed.*

The opinion states the case.

*W. E. Holmes,* for the plaintiff in error.

*Attorney-General Wm. A. Anderson,* for the commonwealth.

Buchanan, J., delivered the opinion of the court.

This is a prosecution by warrant against the defendant for selling ardent spirits, without having obtained a license therefor, to Jack Wallace, Walter Willis, and to other persons unknown.

Upon the calling of the case in the circuit court, to which it had been appealed, the accused moved the court to require the prosecuting attorney to elect for which of the offences charged in the warrant he would prosecute, and he elected to prosecute for the sale alleged to have been made to Jack Wallace.

The commonwealth introduced evidence that the accused, who was a merchant in Chase City, had been selling at his place of business to the public, for about two years prior to November 1, 1906, cider known as "Manhattan," without a license; that in January and August or September of that year he had sold cider to Jack Wallace; that the cider purchased by him in

January, of which he drank a considerable quantity, made and kept him drunk for two days, but the latter purchase, which was less in quantity, did not make him drunk. It was also proved that country cider would produce intoxication if drank in large quantities.

The commonwealth then offered to prove by J. H. Wallace that the accused had sold him cider which made him drunk. The defendant objected to that evidence upon the ground that he was being tried upon the charge of selling to Jack Wallace alone, and that evidence to prove that he had sold to any other person, or on any other occasion, was inadmissible. The court overruled the objection and permitted the evidence to go to the jury, to show that the article sold produced intoxication. This action of the court is assigned as error.

The commonwealth, having elected to prosecute the accused for selling to Jack Wallace, could not under the warrant upon which he was being tried, prosecute him for selling to any other person; nor could it prove that he had made sales to other persons in aid of its proof that the accused was guilty of the offence for which he was being prosecuted. See *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 667; *Cole* v. *Commonwealth,* 5 Gratt. 696; *Walker* v. *Commonwealth,* 1 Leigh 574; 1 Bish. New Cr. Pr., secs. 1120-1124; 2 Whart. Cr. L., sec. 1524-1525; *Pearce* v. *State,* 40 Ala. 720.

The court did not admit the evidence of the sale to J. H. Wallace for either of those objects, but solely for the purpose of showing that the cider sold to the witness, which the evidence tended to prove was the same kind of cider as that sold to Jack Wallace, would produce intoxication, and was, therefore, ardent spirits within the meaning of the statute. The commonwealth had already shown, without objection so far as the record shows, that the accused had been selling cider known and called "Manhattan" for about two years to the public generally, at his store. There was no question that the accused had made the sales testi-

fied to by Jack Wallace—but his defence was, that the cider sold was such as he had the right to sell without a liquor dealer's license. The character of the cider sold and not the fact of the sale to Jack Wallace being the controverted question in the case, evidence by those who had drank it, showing what effect it had upon them, was clearly admissible; and while it would, perhaps, have been better to have asked such witnesses what effect it had upon them, without proving that the accused had sold it to them, it is clear under the facts and circumstances of the case, that the evidence of the sale to J. H. Wallace did not prejudice the accused.

The next question to be considered is whether or not the court erred in instructing the jury that the burden of proof was on the accused to show that the cider sold by him to Jack Wallace was such as the accused had the right to sell without a liquor dealer's license.

By section 141 of an Act of Assembly, approved February, 1904, (Acts of Assembly, 1904, ch. 20, pp. 42-3), it is provided that "No person, corporation, firm, partnership or association shall, within the limits of this state  * * *  sell or offer to sell by sample, representatives or otherwise, wine, ardent spirits, malt liquors, or any mixture thereof, alcoholic bitters, bitters containing alcohol, or fruits preserved in ardent spirits, either by wholesale or retail, or to be drunk at the place where sold, or in any way, without first having obtained license therefor; nor shall the license confer the privilege of selling in any way, except in the manner hereinafter provided.  And all mixtures, preparations and liquids (except pure apple cider), which will produce intoxication shall be deemed ardent spirits within the meaning this act."

By an Act approved March 14, 1906, (Acts 1906, ch. 181) entitled "An Act to define what is pure cider within the meaning of section 141 of chapter 20 of acts 1904, approved February 19, 1904," it is provided, that pure apple cider as mentioned in

that section, and other sections, "shall be construed to mean the pure juice of the fruit used without admixture whatever except preservatives, and not to contain more than seven and one-half *per cent.* of alcohol."

Under the authorities, if this were a prosecution by indictment, it would not be necessary in the indictment to allege that the ardent spirits charged to have been sold was not pure apple cider, as defined by the statute.

In *Commonwealth* v. *Hill,* 5 Gratt. 682, the accused was indicted for selling without a license, by retail, wine, rum, brandy and mixtures thereof, not to be drank at the place where sold, against the statute, &c. He demurred to the indictment because it contained no averment that the liquors charged to have been retailed without a license had not been actually made from the produce of the defendant's own estate or distilled by him, or those in his own employ. In holding that such an averment was not necessary, Judge Lomax, who delivered the opinion of the general court, said, that the offence was created by the third section of the act, which he had quoted, which provided "that any person, other than such as are *thereinafter* excepted, who shall otherwise than as thereinafter expressly provided sell, etc., is subjected to the penalty. What these exceptions and provisos are, will be found in the fourth section, and among them is that of a person selling liquors actually made from the produce of his own estate, etc. It cannot, consistently with any authority which we have met with, be contended that the terms of such enactment as the above have so incorporated the exceptions with the enactments as to require the negative of the exception as an essential element in the indictment, and not to make the matter of the indictment a part of the defense. The rule of law seems to be directly opposed to any such pretension. It is laid down in regard to this doctrine in 1 Chitty Cr. Law, 283, that, when a statute contains provisos and exceptions in distinct clauses, it is not necessary to state in the indictment

that the defendant does not come within the exceptions, or to negative the provisos which it contains." Citing several English cases. "Nor," he continues, "is it even necessary to allege that he is not within the benefit of the provisos, though the purview should expressly notice them; as by saying that none shall do the act prohibited, except in cases thereinafter excepted. * * * For all these are matters of defence, which the prosecutor need not anticipate, but which are more properly to come from the prisoner."

In *Commonwealth* v. *Hart*, 11 Cush. (Mass.) 130, a case for selling intoxicating liquors, where the sale of cider for some purposes was excepted, the indictment was sustained, although the exception was not negatived; the court holding that, where there is an exception so incorporated with the enacting clause of a statute, that the one cannot be read without the other, then the exception must be negatived; but if the exception, by whatever phraseology indicated, is in a substantive clause subsequent to the enacting clause, though it be in the same section, it is a matter of defense to be shown by the defendant. See note to last case in 2 Lead. Cr. Cases, pp. 7 to 18; *State* v. *Abbey*, 29 Vt. 60, 66, 67 Am. Dec. 764; *Keith* v. *State*, 91 Ala. 2, 8 South. 353, 10 L. R. A. 430; 1 Bish. New Cr. Pro. 631-646.

The exception in the statute under consideration is not so incorporated in the enacting clause that one cannot be read without the other. While in the same section, it is in a substantive clause defining what shall constitute ardent spirits within the meaning of the statute. If the commonwealth would not be required to negative the exception in its pleading, it would not of course be required to prove that the cider sold by the accused was not pure cider within the meaning of the statute, but that would be a matter of defense.

The refusal of the court to set aside the verdict because contrary to the evidence, is also assigned as error.

The evidence was clearly sufficient to show that the accused

had sold cider to Jack Wallace after section 141 of the revenue law had been amended by the Act of Assembly approved March 14, 1906, which would and did produce intoxication. But the defendant proved that he purchased the cider sold by him from E. A. Saunders, & Co., wholesale dealers in cider, whiskeys, and other articles, of the city of Richmond, who, through their salesman, represented to and assured the defendant at the time of the purchase, that the same was pure apple cider, and showed him a card, dated January 24, 1906, signed by the internal revenue collector of the United States for the second district of Virginia, that, upon an analysis made of samples of that brand of cider, the samples were shown to have the composition of pure apple cider made from the juice of apples. The defendant also introduced in evidence an analysis of the same brand of cider made in June, 1906, by Froehling & Robertson, analytical chemists, of the city of Richmond, showing that the cider contained of alcohol 5.09 *per cent.* by weight, and 6.35 *per cent.* by volume, and was pure apple cider sweetened with sugar. The commonwealth introduced in evidence an analysis of the same brand of cider, made by the chief chemist of the State Agricultural Department, which showed that the sample furnished contained of alcohol by weight 7.84 *per cent.,* and by volume 9.75 *per cent.,* and seemed to be a mixture of apple cider and grape wine sweetened with sugar. But the analysis introduced by the commonwealth was made under circumstances which rendered it of little value in determining the character of the cider sold by the defendant. It appears that in November, 1906, the town sergeant of Chase City obtained from the defendant three half-gallon bottles of the cider sold by him; that these bottles were turned over to the mayor of the town, who locked them up in a room adjoining his office, where he left the key, to which key and room his bookkeeper had access; that they remained there several weeks, when, about the date of the December term next of the circuit court for that county they were returned to the

town sergeant, who brought them to Boydton, the county seat, and afterwards delivered them to one C. Haskins, whose mother kept the Exchange Hotel at Boydton, where, for three or four weeks, the bottles remained in the hotel office, where any one who desired could have excess to them, and that they were handled and opened by persons in said office, though the clerk of the hotel had not seen any one put anything into them; and that after this, they were sent, at the request of the mayor of Chase City, to the Agricultural Department for analysis.

There was, under these circumstances, ample opportunity for the samples of cider obtained by the town sergeant from the defendant to have been tampered with before the analysis was made. The fact that such analysis showed that the sample furnished the state chemist seemed to be a mixture of apple cider and grape wine, and in that respect different from the samples analyzed by the other chemist, would tend strongly to show that it had been tampered with. The correctness of the analyses introduced in evidence is not questioned. Their value, therefore, as evidence does not depend upon the credibility of the persons who made them, but upon the circumstances under which they were made; and while the analysis made at the instance of the commonwealth was perhaps admissible in evidence, it was made under circumstances which give it little probative value.

It seems to us, therefore, that the defendant showed by a preponderance of evidence that the cider sold by him did not contain more than seven and one-half *per cent.* of alcohol, and upon this ground was entitled to a verdict in his favor, and that the circuit court erred in not so holding.

We are of opinion to reverse the judgment complained of, set aside the verdict, and remand the cause to the circuit court for a new trial.

*Reversed.*