# Richmond.

## FERRIMER V. COMMONWEALTH.

November 16, 1911.

Absent, Cardwell, J.

1. CRIMINAL LAW—*Statutory Offense—Indictment—Sufficiency.*— The indictment against the defendant in the case at bar for selling liquor without a license (a purely statutory offense) charges the offense in the language of the statute and is sufficient.

2. INTOXICATING LIQUORS — *Sale — Regulation by State — Police Power.*—The State of Virginia, in the exercise of its police power, may pass laws for the promotion of the safety, health and morals of the people, and the regulation and control of the traffic in ardent spirits is within the discretion of the legislature under the police power of the State.

3. INTOXICATING LIQUORS—*Licenses—Classification—Interstate Commerce.*—The statute classifying licenses to liquor dealers according to the privileges conferred, and permitting one class to sell only within a limited territory and another to ship anywhere in or out of the State, without discrimination, is within the power of the legislature, and was not intended to regulate or control interstate commerce, and does not tend to have that effect.

4. INTOXICATING LIQUORS—*Sales—Regulation—License—Sales Beyond the State.*—The State may regulate the sale of liquor, even though its transportation beyond the limits of the State be intended, by the imposition of a reasonable license which operates without discrimination upon all of its inhabitants.

Error to a judgment of the Circuit Court of Tazewell county.

*Affirmed.*

The following is a copy of the indictment:

113

"Virginia:

"Tazewell County, to-wit:

"In the Circuit Court of said County.

"The jurors of the grand jury, in and for the county aforesaid, impaneled and sworn at the term hereof commencing on the 22nd day of August, 1910, and now attending said court, upon their oath present that H. F. Ferrimer on the ———— day of June, 1910, in the said county, did unlawfully ship by express ardent spirits, without then and there having a license so to do, against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that H. J. Ferrimer, on the ———— day of June, 1910, in the said county, did unlawfully ship by express ardent spirits, in a quantity of not more than four and one-half gallons, to Vincent Volscent, upon the order of such Vincent Volscent, without then and there having a license so to do, against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that H. J. Ferrimer, on the ———— day of June, 1910, in the said county, did unlawfully sell and ship ardent spirits by express, in a quantity of not more than four and one-half gallons, to Vincent Volscent, upon the order of such Vincent Volscent, without then and there having a license so to do, against the peace and dignity of the Commonwealth of Virginia.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that H. J. Ferrimer, on the ———— day of June, 1910, in the said county, at one time, upon the order of Vincent Volscent, unlawfully did sell in the town of Pocahontas, in said county, to said Vincent Volscent, a quantity of ardent spirits not exceeding four and one-half gallons; that said ardent spirits was so unlawfully sold by

the said H. J. Ferrimer not to be delivered to the said Vincent Volscent at the said place of purchase; that said ardent spirits were so unlawfully sold by the said H. J. Ferrimer not to be delivered to the said Vincent Volscent within the said town of Pocahontas; that said ardent spirits was so unlawfully sold by the said H. J. Ferrimer not to be delivered to the said Vincent Volscent within one mile outside of the corporate limits of the said town of Pocahontas; and that said H. J. Ferrimer did then and there unlawfully ship said ardent spirits by express to said Vincent Volscent, upon the order of said Vincent Volscent, without then and there having a license so to do, against the peace and dignity of the Commonwealth of Virginia."

*Sexton & Roberts,* for the plaintiff in error.

*Samuel W. Williams, Attorney-General,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Ferrimer was indicted in the Circuit Court of Tazewell county for shipping by express ardent spirits without having a license so to do. When the case was called for trial, with the consent of the attorney for the Commonwealth and of the accused in person, the court heard the evidence and determined the case without a jury, upon an agreed statement of facts, which was as follows:

"It is agreed between the attorney for the Commonwealth and the defendant by his attorneys, that the defendant, H. J. Ferrimer, is a resident of the town of Pocahontas, in Tazewell county, Virginia; that on the 25th day of March, 1910, there was granted to him a 'retail license' to sell

ardent spirits in the said town of Pocahontas, from the 1st day of May, 1910, until the 30th day of April, 1911, as provided by an act of the General Assembly of Virginia, approved 16th day of March, 1910, (Acts of Assembly, 1910, page 290), which said license is in the words and figures following, to-wit:

" 'State of Virginia,

     " 'Tazewell county, to-wit:

" 'At a circuit court held for said county at the court house thereof, on the 25th day of March, 1910.

" 'A license was this day granted to H. J. Ferrimer to sell at his place of business in the town of Pocahontas, in this county, to any individual beer, malt liquors, whiskey, wine, brandy, or any mixture thereof, fruits preserved in ardent spirits, alcoholic bitters, and all other mixtures, preparations and liquids which will produce intoxication, in quantities not exceeding four gallons and a half, in jugs, bottles and demijohns, or to be drunk where sold, to be delivered at the place of purchase, or to any place within the city, town, county, or district, or within one mile outside, where the license is granted, and nowhere else in the State, for the period beginning on the first day of May, 1910, and expiring on the thirtieth day of April, 1911.

" 'Teste:          A. B. BUCHANAN, Clerk.'

"That under the said license the defendant now is and has been, since the first day of May, 1910, retailing ardent spirits in the said town of Pocahontas.

"That on the......day of June, 1910, the said defendant in said Tazewell county, State of Virginia, did ship ardent spirits by express, in a quantity of not more than four and one-half gallons, to one Vincent Volscent; that the said Vincent Volscent resided at Mora, in the State of West Virginia; that said defendant packed said ardent spirits at his place of business in said town of Pocahontas, and delivered

said package to the Southern Express Company, at its office in said town of Pocahontas, consigned by the defendant to the said Vincent Volscent, to be delivered to said Vincent Volscent by the said express company at said Mora, West Virginia, all express charges being prepaid by the said defendant; and that said ardent spirits were carried by said express company from said town of Pocahontas and delivered to said Vincent Volscent at said Mora, West Virginia.

"That the said shipment of ardent spirits was made through said express company over the Norfolk and Western Railway, which railway passes immediately out of the corporate limits of the said town of Pocahontas into the said State of West Virginia.

"That said defendant at the time of making the shipment aforesaid, did not have a 'retail and shippers' license, as provided by the above mentioned act of the General Assembly of Virginia."

And the court certifies that this was all of the evidence.

The defendant demurred to the indictment and pleaded not guilty, and moved the court to dismiss the charge against him, "because said offense, if any there was, was for the shipping of whiskey from the town of Pocahontas, Virginia, to Vincent Volscent, to be delivered to the said Vincent Volscent at a point in the State of West Virginia, and therefore was interstate commerce and could not be affected by any act of the General Assembly of the State of Virginia, from which point said shipments were made." But the court overruled said motion and refused to discharge the defendant, overruled the demurrer to the indictment and found the prisoner guilty, and rendered judgment against him for the sum of $50 and costs, to which judgment the defendant, Ferrimer, obtained a writ of error.

The first error assigned is to the action of the court in overruling the demurrer to the indictment.

The indictment is for a statutory offense, is laid in the

language of the statute, and in our judgment is clearly sufficient. See *Smith* v. *Commonwealth,* 85 Va. 924, 9 S. E. 148; *Fletcher's case,* 106 Va. 840, 56 S. E. 149; *White's case,* 107 Va. 901, 59 S. E. 1101; *Runde's case,* 108 Va. 873, 61 S. E. 792; *Dix* v. *Commonwealth,* 110 Va. 907, 67 S. E. 344.

The second assignment of error is the one chiefly relied upon, and is that this was an interstate shipment, and that the statute of Virginia, in so far as it applies to the facts of this case, was a regulation of interstate commerce and therefore void.

The State of Virginia, in the exercise of its police power, may pass laws for the promotion of the safety, health and morals of the people, and the regulation and control of the traffic in ardent spirits is within the discretion of the legislature under the police power of the State. *Farmville* v. *Walker,* 101 Va. 323, 43 S. E. 558, 61 L. R. A. 125, 99 Am. St. Rep. 870.

In the case of *Kidd* v. *Pearson,* 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346, a statute of the State of Iowa was brought under review, which had been construed by the supreme court of that State as "meaning that intoxicating liquors might be manufactured and sold within the State for mechanical, medicinal, culinary and sacramental purposes, but for no other—not even for the purpose of transportation beyond the limits of the State"; and the Supreme Court of the United States held (Justice Lamar delivering its unanimous opinion) that the statute thus construed raised no conflict with the Constitution of the United States, and was therefore valid. The principle thus announced seems to be conclusive of the question under consideration. See also *Mugler* v. *State of Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

In passing the law in question, the State surely never intended any interference with interstate commerce; nor do we think that it tends in any way to regulate or control

interstate commerce. It operates equally upon all citizens engaged in the sale of ardent spirits, a traffic which the good order and well-being of society renders it imperatively necessary that the legislature should strictly limit and control. It provides for licenses of various kinds which carry with them certain privileges. There is the retail liquor license which was issued to Ferrimer, and under which he was entitled to enjoy certain specific and designated rights. The statute provides for another license known as the "retail and shippers' license," which is issued to proper persons upon the payment of a reasonable license fee. Upon obtaining that license the dealer could exercise the privilege which it conferred, to ship by express within the State or without the State, the law making no· discrimination along that line. If the contention of plaintiff in error can be maintained, then any citizen may anywhere within the limits of this Commonwealth sell and ship intoxicating liquors without a license. It is the sale as well as the shipping of the liquor which comes within the operation of the statute and which cannot lawfully be made without first obtaining a license for that purpose, for which the plaintiff in error was indicted and found guilty. If a State may lawfully prohibit the manufacture and sale within the State "even for the purpose of transportation beyond the limits of the State," surely it may regulate the sale of liquor, even though its transportation beyond the limits of the State be intended, by the imposition of a reasonable license which operates without discrimination upon all of its inhabitants.

We are of opinion that there is no error in the judgment complained of, and it is affirmed.

*Affirmed.*