Richmond.

COCHRAN V. COMMONWEALTH.

November 15, 1917.

1. STATUTES—*Constitutional Law—Title—Liberal Construction of Section 52, Constitution of 1902.*—Section 52, Constitution of 1902, which provides that no law shall embrace more than one object, which shall be expressed in its title, is to be liberally construed in determining whether an act is broader than its title; the act is to be upheld if practicable; and the title of an act is sufficient if the provisions of the act may be fairly regarded as in furtherance of the object expressed in its title.

2. STATUTES—*Constitutional Law—Title—Liberal Construction of Section 52, Constitution of 1902.*—All that is required by section 52 of the Constitution is that the subjects embraced in the statute, but not specified in the title, be congruous and have natural connection with or be germane to the subject expressed in the title, as instrumentalities for the accomplishment of the general purposes of the act.

3. STATUTES — *Constitutional Law — Title — Prohibition Act.*—The prohibition act (Acts 1916, chapter 146, page 215) is not unconstitutional, in that it violates section 52, Constitution of 1902, in so far as it prohibits, by section 40, the acceptance and receipt of ardent spirits. The regulation of the acceptance and receipt of ardent spirits by transportation is not only in furtherance of the "enforcement" of the act mentioned in its title, but may be said to be essential thereto.

4. INTOXICATING LIQUORS—*Prohibition Act—Section 40 of the Act—Indictment.*—Under section 40 of the prohibition act (Acts 1916, chapter 146, page 215), which creates the offense for which the accused in the instant case was indicted, if the ardent spirits, the delivery of which was received and accepted by him, were brought or transported by the express company, it is immaterial whether such bringing or transportation was from without or from one point to another within the State. Whether one or the other, if the ardent spirits were transported by the express company (as in the instant case) and the other essential ingredients of the offense existed, the receipt and acceptance of the delivery of the ardent spirits

101

constituted the offense created by the statute. That is to say, whether the ardent spirits were "brought into this State from any point without the State or * * * transported from one point to another within the State," was not of the essence, not an essential ingredient of the offense. Consequently, it was not necessary that any allegation with respect thereto be contained in the indictment.

5. INTOXICATING LIQUORS—*Prohibition Act—Receipt Oftener than Once a Month.*—An indictment under the prohibition act alleging the receipt and acceptance by the accused of delivery of one quart of distilled liquor on November 29th and another quart of same on December 23, 1916 (in effect two quarts of such liquor within the one calendar month beginning with November 29, 1916), charged an offense created by section 40 of the prohibition act, and an allegation in the indictment that the receipt and acceptance was "within a period of thirty days" may be treated as surplusage.

6. INTOXICATING LIQUORS—*Prohibition Act—Section 40—Receipt and Delivery of More than a Quart a Month—Meaning of the Word "Month."*—The prohibition act (Acts 1916, page 215), section 40, provides that no person shall receive or accept delivery from any express company of any ardent spirits brought into the State from any point without the State, or ardent spirits transported from one point to another point within the State, except that a person may receive one quart of distilled liquor not oftener than once a month. Section 3 of the Code of 1904 provides that, "Unless otherwise expressed the word 'month' shall be construed to mean a calendar month." Giving this meaning to the word "month" in the words "not oftener than once a month," it must be read as "not oftener than once a (calendar) month." So a receipt and acceptance of liquor in excess of one quart in the aggregate, between November 29th and December 23, 1916, inclusive, would have been a receipt and acceptance of such excess quantity of liquor oftener than once a calendar month.

7. PROHIBITION ACT—*Indictment and Information—Negativing Exceptions.*—An indictment under section 40 of the prohibition act (Acts 1916, page 215) need not negative and exclude by its allegations the possibility that the accused came within any other exceptions of the statute allowing a person to receive ardent spirits—such as the allowing one to receive the same without limit as to quantity in the home of a neighbor, by section 61—and if personally brought from without the State in a limited quantity not in excess of one quart within a period of thirty days, allowed by section 39 of the act.

8. INDICTMENT AND INFORMATION—*Negativing Exceptions—Separate Sections of the Statute.*—Where exceptions are created by other sections of an act than that under which an offense is charged in an indictment, the indictment need not negative and exclude by its allegations the possibility of the act of the accused charged thereby coming within any of such exceptions.

9. PRESUMPTIONS AND BURDEN OF PROOF—*Instructions—Presumption of Innocence.*—On a trial under the prohibition act, the following instruction was asked·for and refused: "The court instructs the jury that the accused is presumed to be innocent."

   *Held:* No error, as it in effect announced a conclusion of the court, that notwithstanding the evidence in the case the accused was still presumed to be innocent. The correct rule on the subject is that the accused is presumed to be innocent until his guilt is established by the evidence.

10. PROHIBITION ACT—*Instructions—Contents of Package Received by Accused.*—In a prosecution under section 40 of the prohibition act, where the record of the express office and the affidavits of accused excluded every rational hypothesis of the innocence of the accused consistent with the evidence in the case, it is not error to refuse an instruction that the burden is upon the Commonwealth to prove beyond all reasonable doubt that the substance contained in the package delivered to the defendant was distilled spirits.

11. PROHIBITION ACT—*Prosecution Under Section 40—Corpus Delicti.*—The *corpus delicti* in a prosecution for violation of section 40 of the prohibition act (Acts 1916, page 215), was the fact that some one person received delivery of whiskey in excess of one quart in quantity within a period of one calendar month as charged in the indictment; and the express record alone, showing the receipts by the accused of two quarts of liquor within the calendar month, was *prima facie* evidence of that fact, and in the absence of rebutting evidence such ·*prima facie* evidence became conclusive.

12. CORPUS DELICTI—*Circumstantial Evidence.*—Direct evidence is not essential to prove the *corpus delicti* in any case. It may be proved as any other fact may be proved which is essential to establish the guilt of the accused, namely, by circumstantial evidence which produces "the full assurance of moral certainty" on the subject.

13. PROHIBITION ACT—*Evidence—Express Records—Corpus Delicti.*—There is no merit in a contention that, in a prosecution under section 40 of the prohibition act (Acts 1916, page 215), the record of the express company and affidavits of the accused were not admissible in evidence until the *corpus delicti* was otherwise proved.

14. CORPUS DELICTI—*Admissions of Accused.*—Independent of statute, the admissions of the accused "are competent evidence tending to prove the *corpus delicti.*"

15. PROHIBITION ACT—*Evidence—Affidavits of Accused.*—By the prohibition act (Acts 1916, page 215), the affidavits of the accused filed with the express company are made *prima facie* evidence, and they are evidence, independent of statute, as to all facts which they tend to prove which are material in the case, including the *corpus delicti,* although in the absence of corroborative evidence they would be insufficient to establish it. The express records however are such corroborative evidence.

16. PROHIBITION ACT—*Constitutional Law—Admission of Records.*— In a prosecution under the prohibition act the admission of the records of the express company made by strangers to him, does not violate the constitutional right of the accused to be confronted with his accusers and witnesses.

17. CONSTITUTIONAL LAW—*Documentary Evidence—Admissibility in Criminal Cases.*—The constitutional right of a defendant in a criminal prosecution to be confronted with his accusers and witnesses does not exclude proper documentary evidence. Documentary evidence is admissible in criminal as in civil cases, under the same rules which define and limit its admissibility.

18. PROHIBITION ACT—*Documentary Evidence—Records of Express Company.*—In a prosecution under section 40 of the prohibition act (Acts 1916, page 215), the express records, independent of statute, are admissible in evidence, when properly authenticated, as a part of the *res gestae;* and, further, under the rules of evidence provided by the act in question, the record is expressly made admissible in evidence.

19. PROHIBITION ACT—*Affidavit of Accused Admissible as a Confession.*—Affidavits of accused, when receipting for liquor from an express company, were admissible in evidence under the rules applicable to the admissibility of documentary evidence, as confessions of the accused.

20. PROHIBITION ACT—*Section 40—Punishment.*—Section 40 of the prohibition act creates the receipt and acceptance of delivery by transportation of ardent spirits in a quantity in excess of one quart within a period of one month a statutory offense, in addition to and different from the offenses created by the concluding sentence of such section, and the offense is punishable under section 5 of the act, and not under section 40.

Error to a judgment of the Circuit Court of Rockingham county.

*Affirmed.*

The indictment against the accused (omitting the formal parts) contained the following charge against him, namely: That he—

" * * * did heretofore, since the first day of November, 1916, to-wit: on the 23rd day of December, 1916, unlawfully receive and accept delivery of ardent spirits from the Southern Express Company, a corporation and common carrier, in this, that on the said 23rd day of December, 1916, he, the said Charles Cochran, against the form of the statute, received and accepted delivery of one quart of whiskey from the said Southern Express Company, at its office in the city of Harrisonburg, in the county aforesaid, having within a period of thirty days prior thereto, to-wit: on November 29, 1916, received and accepted delivery of a certain other quart of whiskey from the same carrier at the same place, both of the said deliveries being of whiskey consigned to the said Charles Cochran and transported by the said Southern Express Company * * * "

There was a demurrer to the indictment which was overruled by the trial court, followed by a trial by jury. The verdict of the jury found the accused guilty as charged in the indictment, fixed his punishment at a fine of $50.00 and costs and confinement for thirty days in the county jail, upon which sentence was pronounced and judgment of the trial court was entered accordingly.

## THE EVIDENCE.

No evidence was introduced by the accused.

The only evidence in the case was that introduced by the Commonwealth. Such evidence consisted of the testimony

of the express company's agent, W. C. Gaither, and the express company's records and affidavits of the accused kept and made as required by statute.

The testimony of said agent and such records and affidavits (so far as material) are as follows:

"That he is the agent at Harrisonburg, Virginia, of the Southern Express Company, a common carrier, and was such agent at the time of the occurrences hereinbefore mentioned, the defendant Chas. Cochran, a colored man, on November the 29, 1916, called at the office of the said Southern Express Company, in the city of Harrisonburg; and asked if there was a package of whiskey there for him from Hagerstown, Maryland; that upon being advised that there was, Cochran receipted for the same by signing the company's record book, and then made the following affidavit, which was printed on back of express special liquor record (as follows) :

"State of Virginia,

"County of Rockingham.

"I, Chas. Cochran, being duly sworn, depose and say that I am the consignee of a certain shipment of ardent spirits as specified on the other side of this form, this day delivered to me by the Southern Express Company, from Hagerstown, Maryland; that I am not a student or minor, and, if a female, I am the head of a family; that the ardent spirits so received by me were brought into the State on my written order, and that I have not, within the thirty days previous hereto, received any ardent spirits of any kind whatsoever, from any person or from any place whatsoever, in excess of the quantity allowed by the provisions of the act of the General Assembly of Virginia, approved March 10, 1916, or contrary to law, and that the ardent spirits so received by me are for my own use at my own home, and that the said ardent spirits will not be used in violation of law.

"(Signed)    CHAS. COCHRAN,

*"Consignee."*

"Sworn to and subscribed before me, this 29th day of November, 1916.

"(Signed)    W. C. GAITHER, *Agent for*

"*Southern Express Company.*

"SOUTHERN EXPRESS COMPANY,

"(Incorporated)"

"Form 370-Va.                "Special Liquor Record.

"Received at Harrisonburg, Virginia, date November 29, 19.... Affidavit No. 152.

"Consignee, Chas Cochran.

"Kind of ardent spirits, whiskey,—amount 1 qt., weight 4 lbs. Way-bill No. 688, date November 27, 1916, from Hagerstown, Md."

"Paid the express charges, received the package, and departed with it.

"That on December the 23, 1916, the said Cochran again appeared at the office and again asked if there was a package of whiskey there for him from Hagerstown, Maryland, and upon being advised that there was, he signed the express record book and made the following affidavit which is written on the back of the express liquor record, (as follows) :"

(Here followed affidavit precisely the same as the above affidavit only it being dated as made December 23, 1916).

"Special Liquor Record.

"Received at Harrisonburg, Va., date 12-22, 19..., affidavit No. 148.  Consignee, Chas Cochran.

"Kind of ardent spirits, whiskey, amount 1 quart, weight 4 lbs.  Way-bill No. 1570, date 12-21, 19..., from Hagerstown, Maryland.

"Paid the express charges and departed with the package.

"That on each of said occasions there was a quart of whiskey for said Cochran at the express office, which was shipped from the city of Hagerstown, in the State of Mary-

land, to said Cochran, as consignee, at Harrisonburg, and that the same was transported by the Southern Express Company, that each of said packages was labelled one quart of whiskey and was a carton about twelve inches long by four inches wide, such cartons as are regularly used in the shipment of whiskey."

On cross-examination the witness testified, "that he did not open the package or examine the contents of the packages or either of them, that they were sealed when received and he did not break the seals, and did not know from actual personal knowledge what the contents were. The packages were labelled whiskey with large letters as the law required, and were carried by the company as whiskey, one quart each, and Cochran inquired for whiskey and receipted for it as whiskey."

## FURTHER PROCEEDINGS.

The accused objected to the admission in evidence of said affidavits, on the ground that the Commonwealth had not proved the *corpus delicti* and that until such was proven it was improper to introduce any admissions of the accused, but their introduction in evidence was permitted by the trial court over such objection.

## INSTRUCTIONS.

After all the testimony had been introduced the accused asked the court to give the following instructions, all of which were refused:

1. "The court instructs the jury that the accused is presumed to be innocent."

2. "The court instructs the jury that the burden is upon the Commonwealth to prove beyond all reasonable doubt that the substance contained in the package delivered to the

defendant was distilled spirits and unless this has been done, the jury must find the defendant not guilty."

3. "The court instructs the jury that neither the express bill, the affidavit nor the express records, nor all of them combined, are sufficient proof to establish the guilt of the defendant in this case, for the burden rests on the Commonwealth to prove beyond all reasonable doubt, that the contents of the packages received by the defendant was distilled spirits."

4. "The court instructs the jury that the defendant under the law is entitled to receive not oftener than once each calendar month, one quart of distilled liquor, and if the jury believe from the evidence that the defendant in the months of November and December, 1916, did receive but one quart of distilled liquor in each of said months, then the jury will find the defendant not guilty."

5. "If the jury shall find the defendant not guilty they will say so, and no more; if they find him guilty, they will say so and ascertain his punishment, which shall be a fine of not less than $50.00 or confinement in jail, or both, in the discretion of the jury."

Upon the rendition of said verdict of the jury the accused moved the trial court to set aside as contrary to the law and the evidence and grant him a new trial, which motion the court overruled and entered the judgment aforesaid.

### THE MATERIAL FACTS.

Regarding the evidence in the case under the rule applicable in this court, the following facts, material in the case, must be taken as proved, namely:

That the accused received and accepted delivery from an express company of ardent spirits brought into the State from a point without the State in the quantity of two quarts between November 29th and December 29th, which

would have been two quarts within one calendar month, to-wit, one quart thereof on November 29th and another quart thereof on December 23, 1916.

*Charles A. Hammer,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leslie C. Garnett,* for the Commonwealth.

SIMS, J., after making the above statement, delivered the opinion of the court as follows:

The assignments of error raise the following questions which will be considered and disposed of in their order as stated below:

1. Is the act of Assembly, 1916, p. 215 (under which the indictment in the instant case was found), unconstitutional in so far as it prohibits the acceptance and receipt of ardent spirits, in that it violates section 52 of the Constitution of Virginia with respect to its title not being broad enough to admit of such enactment?

The title to the act, so far as pertinent to the above question, is as follows: "An act to define ardent spirits and to prohibit the   *   *   *   use, sale, offering for sale, transportation for sale, keeping for sale, and giving away of ardent spirits, except as provided herein;   *   *   *   to prescribe the force and effect of certain evidence and (in) prosecutions for violation of this act;   *   *   *   prescribing certain rules of evidence in certain prosecutions under this act;   *   *   *   to prescribe for the enforcement of this act   *   *   *"

The rule is well settled that the Constitution (section 52) is to be liberally construed in determining whether an act is broader than its title; that the act is to be upheld if prac-

ticable; that the title of an act is sufficient if the provisions of the act may be fairly regarded as in furtherance of the object expressed in its title. All that is required by section 52 of the Constitution is that the subjects embraced in the statute, but not specified in the title, be congruous and have natural connection with or be germane to the subject expressed in the title, as instrumentalities for the accomplishment of the general purposes of the act. *Iverson Brown's Case,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; *Ellinger's Case,* 102 Va. 100, 45 S. E. 807; *Willcox's Case,* 111 Va. 849, 69 S. E. 1027; *District School Board* v. *Spilman,* 117 Va. 201, 84 S. E. 103; *Whitlock* v. *Hawkins,* 105 Va. 242, 53 S. E. 401; *Conk* v. *Skeen,* 109 Va. 6, 63 S. E. 11.

Tested by the rule above stated, the above question must be answered in the negative. The regulation of the acceptance and receipt of ardent spirits by transportation is not only in furtherance of the "enforcement" of the act mentioned in its title, but may be said to be essential thereto.

2. Is the indictment in the instant case defective in that it does not charge that the ardent spirits, the delivery of which is alleged to have been made and accepted by the accused, were "brought into this State from any point without the State, or * * * transported from one point to another within the State?"

Under section 40 of the act, which creates the offense for which the accused was indicted, if the ardent spirits, the delivery of which was received and accepted by him, were brought or transported by the express company, it is immaterial whether such bringing or transportation was from without or from one point to another within the State. Whether one or the other, if the ardent spirits were transported by the express company (as in the instant case) and the other essential ingredients of the offense existed, the receipt and acceptance of the delivery of the ardent spirits constituted the offense created by the statute. That is to

say, whether the ardent spirits were "brought into this State from any point without the State or * * * transported from one point to another within the State," was not of the essence, not an essential ingredient of the offense. That being so it was not necessary that any allegation with respect thereto be contained in the indictment. *White's Case,* 107 Va. 901, 59 S. E. 1101; *Fletcher's Case,* 106 Va. 840, 56 S. E. 149; *Rose's Case,* 106 Va. 850, 56 S. E. 151; *Runde's Case,* 108 Va. 873, 61 S. E. 792; *Clopton's Case,* 109 Va. 813, 63 S. E. 1022; *Dix's Case,* 110 Va. 907, 67 S. E. 344; *Ferrimer's Case,* 112 Va. 897; 72 S. E. 699; *Shiflett's Case,* 114 Va. 876, 77 S. E. 606.

The indictment in the instant case charges that the deliveries of liquor in question were by transportation and it contains allegations of the other essential ingredients of the offense, and therefore complies with the requirements of law in question.

3. Does the indictment, in alleging the receipt and acceptance by the accused of delivery of one quart of distilled liquor on November 29th and another quart of same on December 23, 1916 (in effect two quarts of such liquor within the one calendar month beginning with November 29, 1916) charge an offense created by section 40 of the statute in question?

The language of section 40 of said act, which creates the offense for which the accused was indicted in the instant case, so far as material, is as follows:

"Section 40. No person in this State shall receive or accept delivery from any * * * express company * * * any ardent spirits brought into this State from any point without the State, or ardent spirits transported from one point to another point within this State, except as follows: He may receive one quart of distilled liquor * * * not oftener than once a month * * *."

Section 5 of the Code of Virginia provides that, "Unless

otherwise expressed the word 'month' shall be construed to mean a calendar month." Giving this meaning to the provision of the other statute above quoted, namely, "not oftener than once a month," it must be read as "not oftener than once a (calendar) month." Now from November 29th, a calendar month would extend to December 29th. To illustrate: A negotiable note dated November 29, 1916, payable one month after date, would fall due on December 29, 1916. So that a receipt and acceptance of liquor in excess of one quart in the aggregate, between November 29th and December 23, 1916, inclusive, would have been a receipt and acceptance of such excess quantity of liquor oftener than once a calendar month. Therefore, it is plain that question 3 above must be answered in the affirmative.

So far as the instant case is concerned, the allegation in the indictment that the said receipt and acceptance was "within a period of thirty days" may be treated as surplusage. Hence, also, the positions taken in the extended argument on both sides of the case, both orally and in the petition and in the briefs of counsel, on the subject of the thirty-day period, need not be discussed by us. However, if such an allegation had been necessary in the instant case and was not surplusage, the offense charged was committed "within a period of thirty days" and was, therefore, proved as laid in the indictment, and hence, also, we need not further enter upon the discussion of the subject in the instant case.

4. Is the indictment defective in that it does not negative and exclude by its allegations the possibility that the accused came within any other exceptions of the said statute allowing a person to receive ardent spirits—such as the allowing one to receive same without limit as to quantity in the home of a neighbor, by section 61—and if personally brought from without the State in a limited quantity not in excess of one quart within a period of thirty days, allowed by section 39 of the act?

Section 40, which creates the offense charged in the indictment in the instant case, concerns the receipt and acceptance by persons of delivery of ardent spirits by transportation for them and creates an offense of the act of such receipt and acceptance of such delivery by transportation from any person or from any place whatever from without or from within the State. Therefore, the receipt of distilled liquor referred to in such section of the statute "from any person or from any place," has reference only to receipts of liquor by transportation. Similarly the phrase in section 40 of the act, "in excess of the quantity allowed by this act," has reference only to the quantity of ardent spirits allowed by such section to be received by a person *by transportation* for him by some person or common carrier other than himself. Hence, the other exceptions of the statute in other sections thereof allowing a person to receive ardent spirits, referred to in the question, have no application to the said offense created by section 40 of the act. If the accused committed that offense he could not come within any of the other exceptions of the statute in reference to the receipt of ardent spirits, since none of those exceptions consist of such receipt *by transportation* for the accused. Therefore, the question under consideration must be answered in the negative.

But if this were not so and the receipt of ardent spirits allowed by other sections of the act than section 40 thereof would constitute exceptions within which the act of the accused of receiving ardent spirits might fall, so that he would not have been guilty of any offense under the statute, still it is well settled that, since such exceptions are created by other sections of the act than section 40, under which the offense is·charged in the indictment in the instant case, the indictment need not negative and exclude by its allegations the possibility of the act of the accused charged thereby coming within any of such exceptions.

*Hill's Case,* 5 Gratt. (46 Va.) 682, 687, *et seq; Hendricks' Case,* 75 Va. 934, 943; *Devine's Case,* 107 Va. 860, 60 S. E. 37, 13 Ann. Cas. 361.

5. We come now to the consideration of the instructions offered by the accused and refused by the trial court, and whether such court committed any error in refusing to give such instructions?

(a) As to the first instruction above quoted: It was not in proper form to correctly instruct the jury as to the presumption of innocence attending the accused. It in effect announced a conclusion of the court, and peremptory direction to the jury to find accordingly, that notwithstanding the evidence in the case the accused was still presumed to be innocent.

The correct rule on the subject is that the accused is presumed to be innocent until his guilt is established by the evidence. He rests secure in that presumption of innocence until proof is adduced which establishes his guilt beyond a reasonable doubt. 4 Ency. Dig. Va. & W. Va. Rep., 75. There are many elaborations and explanations of this rule touching what is a reasonable doubt and bringing out other further distinctions making the rule applicable to particular cases, which are proper to be made in instructions in particular cases, as appears from the numerous decisions of this court on the subject, but none of them should have the effect of charging the jury that the presumption of innocence still adheres to the accused notwithstanding that the evidence in the case may establish his guilt beyond a reasonable doubt.

(b) As to the second instruction above quoted: There was no evidence in the case on which to base this instruction, if the record of the express company and the affidavits above referred to were admissible in evidence. (We will presently consider the latter question.) Such record and affidavits excluded every rational hypothesis of the in-

nocence of the accused consistent with the evidence in the case.

(c) As to the third instruction above quoted: It is contended for the accused that this instruction should have been given, because—

(1c) The *corpus delicti* was not proved in the instant case, in this, that—

(1c[1]) The record of the express company and affidavits were not admissible in evidence until the *corpus delicti* was proved by other evidence than such records and affidavits;

(1c[2]) That the affidavits being admissions of the accused, were not admissible to prove the *corpus delicti;*

(1c[3]) That the admission of such record, made by strangers, who were not produced to testify, violated the constitutional right of the accused (Section 8, Virginia Constitution) "to be confronted with his accusers and witnesses;" and

(1c[4]) If admissible, such record and affidavit were insufficient to prove the *corpus delicti*, because the latter consisted in the fact that the substance shipped and received was distilled liquor and the only persons who could know such fact were the consignor, who sealed the package, and the consignee, who received and opened it, and (it is to be presumed) not the latter unless he tasted or otherwise made an actual test of it.

Now in regard to these positions (referring to them in their order as stated) it is deemed sufficient to say:

(1c) The *corpus delicti* in the instant case was the fact that some one person received delivery of whiskey in excess of one quart in quantity within a period of one calendar month, as charged in the indictment.

The express record alone in the instant case, if admissible, was *prima facie* evidence of that fact. Such record showed *prima facie* that some one person having the same name of the accused, received delivery of whiskey which

constituted the *corpus delicti* in the instant case. In the absence of rebutting evidence such *prima facie* evidence became conclusive.

Direct evidence is not essential to prove the *corpus delicti* in any case. It may be proved as any other fact may be proved which is essential to establish the guilt of the accused, namely, by circumstantial evidence which produces "the full assurance of moral certainty" on the subject. *Nicholas' Case,* 91 Va., at p. 750, 21 S. E. at p. 367, and authorities therein cited.

(1c¹) There is no merit in the position that the record of the express company and affidavits of the accused were not admissible in evidence until the *corpus delicti* was otherwise proved. As stated in the opinion of the court in *Nicholas' Case, supra,* "If the contention of counsel was sound there could be no conviction upon circumstantial evidence." 91 Va. 750, 21 S. E. 366.

(1c²) There is no merit in this contention. Independent of statute, the admissions of the accused "are competent evidence tending to prove the *corpus delicti.*" *State* v. *Hall,* 31 W. Va. 505, 7 S. E. 422. In the absence of all other and corroborative evidence the admissions would be insufficient to establish the *corpus delicti;* but in the instant case the record of the express company furnished sufficiently corroborative evidence of the *corpus delicti.* (Such record was, indeed, sufficient independent of such fact, as above stated.) By said statute the affidavits are made *prima facie* evidence, and they are evidence, independent evidence of statute, as to all facts which they tend to prove which are material in the case, including the *corpus delicti.*

(1c³) No authority is cited to support this position, and there is no merit in it. The constitutional provision in question is as follows:

"Section 8  *  *  *  That in all criminal prosecutions a

man hath a right  *  *  *  to be confronted with the accusers and witnesses.  *  *  *"

It is well settled that the constitutional provision quoted is not intended to exclude proper documentary evidence. *Bracey's Case*, 119 Va. 867, 89 S. E. 144; *Runde's Case*, 108 Va. 873, 61 S. E. 792; Bishop on Cr. Pr. (3d ed.), sections 1132-4. Documentary evidence is admissible in criminal as in civil cases, under the same rules which define and limit its admissibility.

Independent of statute, the express record was admissible in evidence, when properly authenticated, as a part of the *res gestae*. See authorities cited in 4 Ency. Dig. Va. & W. Va. Rep. 775; *Cluverius's Case*, 81 Va. 787, as to documentary evidence consisting of letters; *Coleman's Case*, 25 Gratt. (66 Va.) 865, 18 Am. Rep. 711, as to a public record. Further, under the rules of evidence provided by the prohibition statute in question, such record is expressly made admissible in evidence.

The affidavits were admissible in evidence under the rules applicable to the admissibility of documentary evidence, as confessions of the accused. See authorities cited in 4 Ency. Dig. Va. & W. Va. Rep. 778.

(1c[4]) This position is the same in substance as that above considered, to the effect that the *corpus delicti* cannot be proved by circumstantial evidence, but only by direct testimony of a witness or witnesses who have actual personal knowledge of such fact. As we have seen the *corpus delicti* may be proved as any other fact may be proved and that therefore such position is untenable. *Nicholas' Case, supra*, and authorities therein cited.

(d) As to the fourth instruction above quoted: This instruction involves the same position as that covered by question 3 above, and such position need not be further dealt with.

(e) As to the fifth and last instruction above quoted:

This instruction involves the question whether section 40 of the said act. creates the receipt and acceptance of delivery by transportation of ardent spirits in a quantity in excess of one quart within a period of one month a statutory offense, in addition to and different from the offenses created by the concluding sentence of such section. We are of opinion that such section does create such first named offense. This being true, that offense is punishable under section 5 of said act, and not under section 40 thereof, as predicated by the instruction under consideration, and hence the position taken in such instruction is untenable.

Therefore, we are of opinion that all of the said instructions were properly refused by the trial court.

6. The only remaining question raised by the assignments of error is whether there was error in the refusal of the trial court to set aside the verdict and judgment aforesaid and grant a new trial?

It is obvious from the statement of the evidence and facts, and from what is said above as to the law of the case, that there was no error in the refusal of the trial court to set aside the verdict and judgment and grant a new trial.

For the foregoing reasons, we are of opinion to affirm the judgment complained of.

*Affirmed.*