# Richmond.

## COMMONWEALTH v. WILLCOX, HANNAN AND KELLINGER.

### January 11, 1911.

1. CONSTITUTIONAL LAW—*Code, Section 4052—Appeal by Common-wealth.*—Under the provisions of section 88 of the Constitution a writ of error does not lie upon the petition of the Commonwealth in a case involving the life or liberty of a person where no question touching the State revenue is involved, and hence so much of section 4052 of the Code as provides for a writ of error at the instance of the Commonwealth in a case merely involving the violation of a law declared to be unconstitutional is null and void.

2. CRIMINAL LAW—*Former Jeopardy—Indictment Dismissed on De-murrer.*—If a demurrer to an indictment has been sustained and the indictment dismissed, before any jury is sworn, the accused has never been in jeopardy, and may be again indicted and tried for the same offense charged in the indictment.

3. STATUTES—*Validity—Title of Statute—Sufficiency.*—The constitutional provision that "No law shall embrace more than one object, which shall be expressed in its title" was not intended to obstruct honest legislation nor to prevent the incorporation into a single act of the entire statutory law upon one general subject. Although an act authorizes many things of a diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. If the subjects embraced in the statute, but not expressed in its title, have congruity or natural connection with the subject stated in the title, or are cognate or germane thereto, the requirement of the constitution as to the title is satisfied.

4. ELECTIONS—*Primaries—Title of Chapter of Code on Elections—Sufficiency.*—The title of a chapter of the Code: "General and Special Elections; When and Where to be Held; Regulations for their Conduct and Government; Compensation for Services in Elections" is sufficiently broad to cover sections regulating the conduct of *primary* elections, and prescribing penalties and punishment for the violation of such regulations. The primary,

when adopted by a political party, becomes an inseparable part of the election machinery, and if a candidate to be voted for at the general election is to be selected at the primary, it is impossible to secure the regularity and purity of the general election without in the first place guarding against irregularity and fraud at the primary election. The primary election constitutes a necessary part and fulfils an essential function in the plan to promote honesty of elections which shall faithfully reflect and register the unbought will of the electors. If there be fraud in the primary election, it is vain to regulate the conduct of the general election. Primary elections in their nature have such a relation to and bearing upon general elections that the omission to bring them within the law would render abortive the legislative plan for securing the regularity and purity of elections.

Petition for a writ of error from a judgment of the Corporation Court of the city of Norfolk.

*Refused.*

The opinion states the case.

*Samuel W. Williams, Attorney General,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The grand jurors of the Commonwealth of Virginia for the city of Norfolk returned to the corporation court of that city, at its October term, 1910, an indictment against Willcox, Hannan and Kellinger, from which it appears that they were judges at a primary election held the preceding August in the second congressional district of the State of Virginia, by the political party in said State known as the Democratic party, under a plan provided by the said party, which requires its candidates to be nominated by primary elections, and that they being the duly authorized and qualified judges of election in the second precinct of the second ward of the city of Norfolk, designated as such by the proper authorities of said political party, while acting as judges, in

violation of the rules, regulations and requirements prescribed in the plan adopted by said political party and in violation of the laws of Virginia, did in the city and State aforesaid wilfully, knowingly and corruptly cause to be placed upon the official poll books used by them, acting as said judges at said precinct in said primary election, the name of one Ernest H. Meeks as having voted at said precinct in said primary election, and did wilfully, knowingly and corruptly count him, the said Ernest H. Meeks, as having voted at said precinct in said primary election, when as a matter of fact the said Ernest H. Meeks did not vote at said precinct in said primary election, which fact was known to the said Edward Willcox, James T. Hannon and Frank Kellinger, acting as judges as aforesaid, and that they did wilfully, knowingly and corruptly certify said poll books containing the name of the said Ernest H. Meeks as a voter as aforesaid, and did wilfully, knowingly and corruptly make a certificate of the votes cast at said precinct in said primary election, in which said certificate a vote was counted, included and returned as having been cast by the said Ernest H. Meeks, to the proper authorities of said political party, against the peace and dignity of the Commonwealth.

The defendants appeared in person and by counsel and demurred to the indictment, and the demurrer having been fully argued was sustained, the indictment dismissed and the defendants discharged.

The Attorney General has presented to this court a petition for a writ of error to this judgment, and the question arises: Have we jurisdiction to award the writ?

Section 4052 of Virginia Code, 1904, relied upon in the petition, does seem to confer such jurisdiction. It is as follows: "A writ of error shall lie in a criminal case to the judgment of a circuit court or the judge thereof, or of a corporation court or of a hustings court, from the court of appeals. It shall lie in any such case for the accused, and if the case be

for the violation of law relating to the State revenue, or for the violation of a law therein declared to be unconstitutional, it shall lie also for the Commonwealth." .

But the statute must yield to the Constitution, which in section 88 provides, that "Subject to such reasonable rules, as may be prescribed by law, as to the course of appeal, the limitation as to time, the security required, if any, the granting or refusing of appeals, and the procedure therein, it (the court of appeals) shall, by virtue of this Constitution, have appellate jurisdiction in all cases involving the constitutionality of a law as being repugnant to the Constitution of this State or of the United States, or involving the life or liberty of any person; and it shall also have appellate jurisdiction in such other cases, within the limits hereinafter defined, as may be prescribed by law; but no appeal shall be allowed to the Commonwealth in any case involving the life or liberty of a person, except that an appeal by the Commonwealth may be allowed by law in any case involving the violation of a law relating to the State revenue."

In the face of this plain constitutional inhibition, we cannot take jurisdiction of a case which involves the life or liberty of a person, upon the petition of the Commonwealth.

In the case before us, however, it is not a matter of serious moment. The indictment was demurred to by the defendants, the demurrer was sustained, and the indictment was dismissed. The accused were never in jeopardy, and may be again indicted and tried for the offense whereof they are accused, if the Commonwealth shall be so advised.

In *Dulin's Case*, 91 Va. 718, 20 S. E. 821, Judge Buchanan speaking for this court upon the subject of "Twice in Jeopardy," says: "In order to make such a defense with success, the party relying upon it must show that he has been put upon his trial before a court which has jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and that a jury has been em-

paneled and sworn, and thus charged with his deliverance. Anything short of this is insufficient to raise a bar against a new indictment or prosecution for the same offense." And we may say here, as was said in that case: The accused have never been put upon their trial, no jury has ever been charged with their deliverance, and they have, therefore, never been in jeopardy with respect to the offense of which they are accused.

In the case of *Commonwealth* v. *Jackson Wise*, the Hustings Court of the city of Richmond reached a different conclusion with respect to the same law. Wise was found guilty, sentenced to confinement in jail, and applied to this court for a writ of error, which was refused by an order entered April 10, 1906, which recites that "the court being of opinion that the said judgment is plainly right doth reject said petition." No opinion was filed with the order just recited, and in view of the fact that a diversity of opinion exists among the courts of first instance, we think it proper to state the reasons which controlled the court. The questions involved are of the greatest importance, for if the statute under which Wise was convicted be null and void as repugnant to the Constitution then this Commonwealth is without any effectual regulation with respect to the conduct of elections, is without any efficient means to secure honesty in elections, and the legislature has wholly failed to discharge the high duty imposed upon it by the Constitution, to enact such laws as are necessary and proper for the purpose of securing the regularity and purity of general, local and primary elections, and preventing and punishing any corrupt practices in connection therewith.

The Constitution of the State having prescribed who may and who may not vote, the duty devolved upon the legislature to provide the method of voting and to guard against improper, illegal or fraudulent voting, and to this end it has adopted certain rules and regulations. They are to be found

in chapter 10 of the Code. The caption of that chapter is as follows: "General and Special Elections; When and Where to be Held; Regulations for Their Conduct and Government; Compensation for Services in Elections." It consists of numerous sections with their approprate heads or sub-titles. As it appears in the Code of 1887, it does not refer to the subject of primary elections.

By the Constitution of July, 1902. it is provided, in section 36, that "the General Assembly shall enact such laws as are necessary and proper for the purpose of securing the regularity and purity of general, local and primary elections, and preventing and punishing any corrupt practices in connection therewith."

In the performance of this duty the legislature passed an act approved January 11, 1904, which is in large measure identical with chapter 10 of the Code of 1887. In obedience to the mandate of section 36 of the Constitution, just quoted, it added a section, 122-o, which contains three sub-divisions, the first of which provides, that "No person shall vote at any legalized primary election for the nomination of any candidate for office unless he is at the time registered and qualified to vote at the next succeeding election."

"2. In all cases where by its plan of organization, or otherwise, any political party in this State requires its candidates to be nominated by primary elections, such elections shall be conducted by the judges and clerks, or other officers designated by the proper committee or other proper authority of any such party, and under such rules, regulations, and requirements as may be prescribed in the plan adopted by such party.

"3. All laws intended to secure the regularity and purity of general and local elections, and to prevent and punish any corrupt practices in connection therewith, and the penalties and punishments now or hereafter prescribed by law for such offenses, shall, so far as they may be applicable, apply

to all primary elections, whether the same be held under any statute law of this State or under a plan provided by some political party."

The statute as approved January 11, 1904, containing this section, appears in the compilation of laws known as Pollard's Code of 1904 as chapter 10, and takes the place of chapter 10 of the Code of 1887. The caption to the chapter remains unchanged; it is now just what it was before the section with respect to primary elections was introduced.

Section 52 of the Constitution declares, that "No law shall embrace more than one object, which shall be expressed in its title;" and the contention is that there is nothing in the title of this act which expresses any intention to legislate as to primary elections. It is claimed that as the title is "in reference to general and special elections," it is restrictive and specific rather than comprehensive and general; that it applies to certain kinds of elections which the act goes on to define, viz., general elections and special elections; that while it is true that cognate and germane legislation may be valid under a general title expressing a general subject, yet that the title must be sufficiently comprehensive to include them; and Cooley on Constitutional Limitations is cited in support of the proposition, that "As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in the enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. Courts cannot enlarge the scope of the title, they are vested with no dispensing power. The Constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title may have been made more comprehensive, if in

fact the legislature has not seen fit to make it so." Cooley's Const. Lim., p. 178.

*Lacy* v. *Palmer*, 93 Va. 159, 24 S. E. 930, 57 Am. St. Rep. 795, 31 L. R. A. 822, is relied upon.    In that case a party was indicted for betting on races, the indictment being drawn under an act, the title of which was "pool selling, and so forth." Under this caption the statute provided that it should be unlawful for any ·person or persons to make any bet or wager, or receive or record or register, or forward, or purport or pretend to forward, any money, thing, or con· sideration of value to be bet or wagered upon the result of any trial of speed or power of endurance or skill of animals or beasts which is to take place beyond the limits of this Commonwealth," etc.   The court held that the act was broader than its title and was, therefore, unconstitutional as to all offenses created by it, except pool selling on horse races; and that the words "and so forth" express nothing and mean nothing as a compliance with the constitutional provision. In the course of the opinion the court said, that the title to the act only sets out a particular species, while the act it-self may be said to embrace the genus.  The act makes unlawful almost every conceivable form of making bets or wagers upon the results of trials of speed of horses, while the title only mentions the particular form of wager or bet known as "pool" or "pool-selling."

It is contended that while there may be no such incongruities in the objects and purposes expressed in the statute as to make it repugnant to that provision of our Constitution which declares that no law shall embrace more than one object which shall be expressed in its title, section 122-o renders the act broader than its title, and it is to that extent null and void.

The construction of the constitutional provision, that no law shall embrace more than one object, which shall be expressed in its title, was before this court in the case of *Com-*

monwealth v. Brown, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110. The unanimous opinion of the court was written by Judge Riely, and the conclusion reached was that the title of an act will be sufficient, within the meaning of the Constitution, if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object expressed in the title. All that is required is that the subjects embraced in the statute, but not specified in the title, be congruous and have natural connection with or be germane to the subject expressed in the title. And the Constitution is to be liberally construed so as to uphold the law, if practicable. It was claimed in that case that the body of the statute embraced many objects instead of one; that it amended and repealed many sections of the Code; that the independent sections had various objects; and that the title should have stated and shown what subject each section as amended and re-enacted had reference to, what subject each section repealed had reference to, and that the subject-matter in the independent sections should have been clearly set forth in the title. Judge Riely, in his opinion, says: "The provision of the Constitution is a wise and wholesome one. Its purpose is apparent. It was to prevent the members of the legislature and the people from being misled by the title of a law. It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation. On the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of sep-

arate acts on a single subject. Although the act or statute authorizes many things of a diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title."

In *Ingles* v. *Straus*, 91 Va. 209, 21 S. E. 490, Judge Cardwell, speaking for the court, maintains the identical principle, that "If the subjects embraced by the statute, but not specified in the title, have congruity or natural connection with the subject stated in the title, or are cognate or germane thereto, the requirement of the Constitution as to the title is satisfied;" and quotes with approval the case of *Johnson* v. *Harrison*, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, where it is said, that "All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected."

"The fact that the act authorizes many things of a diverse nature to be done will not affect the sufficiency of the title, provided the doing of such things may be fairly regarded as in furtherance of the general subject of the enactment."

*Ingles* v. *Straus, supra.*   See also *Lacey* v. *Palmer, supra,* to the same effect.

The case of *Commonwealth* v. *Brown, supra,* was the subject of annotation and criticism by that eminent jurist, Judge Burks, in 1. Va. Law Reg., at p. 118, where the conclusion reached was warmly commended; and that line of decisions has been approved by time, the most just, as well as the most severe, of all critics.

If the caption to the chapter had been, "To Regulate General Elections," it might well have been contended that it was too narrow to embrace special elections, for between the two there is no necessary connection, and irregularity or fraud in the conduct of a general election would have no necessary bearing or connection with the conduct of a special election. But is this true with respect to the relation which a primary election bears to the general or to the special election with reference to which it is held? We know, as a matter of common knowledge, that the purpose of holding a primary election is to select a candidate to be voted for by a party organization at the ensuing general or special election. We know that the person selected at the primary election to be voted for at the general or special election will receive the votes of the members of the party to which he belongs and for which the primary is held, and if both political organizations, or all political organizations, into which a community is divided, hold primary elections, it necessarily follows that the person chosen at the primary becomes the nominee of his party to be voted for at the general election, and that one of the primary nominees will ultimately be elected to the office.

In other words, the primary when adopted by a political party becomes an inseparable part of the election machinery, and if a candidate to be voted for at the general election is to be selected at a primary, it is impossible to secure the regularity and purity of the general election without in the

first place guarding against irregularity and fraud at the primary election. The primary election constitutes a necessary part, and fulfils an essential function in the plan to promote honesty in the conduct of elections—elections which shall faithfully reflect and register the unbought will of the electors. If there be fraud in the primary election, which is the very root from which the whole system of regulation springs, it is vain to regulate the conduct of general elections, for the fraud by which the nominee at the primary election is chosen enters into and is an ineradicable constituent in the result. However fair the general election may be, if at that election men have no choice but to vote for candidates who have been nominated by fraudulent practices at primaries, or else to desert their party, which would be in most instances but to throw away their votes without achieving any good result, the effect of the election must be the consummation of a fraud and the defeat of the will of the people, for "of thorns men do not gather figs, nor of a bramble bush gather they grapes."

We are of opinion that section 122-o is not only cognate and germane to, congruous with and in furtherance of the object expressed in the title to chapter 10 of the Code, which fully satisfies the requirements of the Constitution, without resort to any liberality of construction, but that primary elections in their nature have such a relation to and bearing upon general elections, that the omission to bring them within the law would have left the plan devised by the legislature for securing the regularity and purity of elections wholly abortive and ineffectual.

Wise was convicted in 1906. The statute law on this subject has undergone no change since that time. The petition for the writ of error on behalf of Wise urged the same objections to the validity of the section under which he was convicted as were relied upon in the case of *Commonwealth* v. *Willcox*, as appears from the opinion of the trial court

filed with the record in the latter case. Before the order was entered refusing the petition in the Wise case, we gave the whole subject careful consideration, and further investigation and reflection have strengthened the conclusion then expressed.

We have felt it to be our duty to set forth at large our views upon this most important and interesting question, for to have refused this petition without assigning reasons would have left the law upon a subject of the gravest importance in an unsatisfactory state. This court having refused a writ of error where the accused had been found guilty and sentenced to punishment under section 122-o, to have refused the petition of the Commonwealth in this case without explanation would have placed the court in a contradictory position, and we have, therefore, deemed it proper to discuss the whole subject, and to put the law of the State regulating elections upon a sure foundation.

The petition for the writ of error is denied.

*Writ refused.*