## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### LUCCHESI V. COMMONWEALTH.

#### January 24, 1918.

1. INTOXICATING LIQUORS—*Prohibition Act—Transportation—Sufficiency of Indictment.*—The first count of an indictment for violation of the prohibition act charged the accused with bringing more than one quart of ardent spirits into the State from a point without to a point within this State for use within the State; the second count charged him with unlawfully bringing into the State from a point without the State to a· point within this State more than one quart of ardent spirits within a period ·of thirty days; and the third count with unlawfully transporting ardent spirits from one point to another within this State.

   *Held:* That this indictment was sufficient under section 39 of the prohibition act (Acts 1916, page 215).

2. SEARCHES AND SEIZURES—*Admissibility of Evidence Illegally Obtained—Articles Taken from Accused.*—A person legally arrested and in the custody of the law on a criminal charge may be subject to a personal search and examination, even though against his will, for evidence as to his criminality, and, if found, it may be ·seized without violating· his constitutional rights.   And if any person, even by illegal seizure, procure possession of any article, instrument, or document, the State may, notwithstanding such· illegal seizure, use it, if necessary, as legitimate evidence against the person from whom it was so obtained to convict him of a crime, or upon an investigation against ·such person before a grand jury, it being an established rule that the court can take no notice of how such evidence was obtained, whether originating ·from a legal or an illegal source.

3. SEARCHES AND SEIZURES—*Admissibility of Evidence Illegally Obtained—Articles Taken from Accused—Prohibition Act—Case at Bar.*—Before the accused who was charged with violation of the prohibition law was arraigned, he petitioned the court to restore to him the suit case and the ardent spirits contained therein, which were taken from him by the policemen upon his arrest; a motion to like effect was made at the trial before the jury were ·sworn; and again, while the Common-

wealth was introducing its evidence in chief, he objected to introduction of the evidence that the suit case contained such ardent spirits.

*Held:* That such evidence was admissible.

4. INTOXICATING LIQUORS—*Prohibition Act—Transportation—Sufficiency of Evidence.*—Accused was arrested in the city of Richmond. He had arrived upon a train from Washington, D. C., which was going south, and had in his hand a suit case. He first said that he had no whiskey, but when arrested admitted that he had whiskey in the suit case. When the officers opened the suit case it was found to contain fourteen quarts of whiskey and a quart of bitters.

*Held:* That the evidence was clearly sufficient, unless accused was upon an interstate journey, to convict him of the violation of the statute forbidding the transportation of more than one quart of liquor in this State in personal baggage.

5. STATUTES—*Constitutional Law—Title and Subject—Construction of Constitutional Provision.*—Although a statute refers to many things of a diverse nature, the title will be sufficient if the subordinate provisions of the statute may be fairly regarded as in furtherance of and as facilitating the accomplishment of the general object expressed in the title. The constitutional inhibition was not intended to hinder remedial legislation, nor to prevent the incorporation in a single act of the entire statutory law upon one general subject. There should be a liberal construction of the title so as to uphold the statute if practicable.

6. STATUTES—*Constitutional Law—Title and Subject—Construction of Constitutional Provision—Prohibition Act.*—All the provisions in the prohibition act against the transportation of liquor are congruous and germane to the title, and the methods devised for the accomplishment of its general purpose.

7. INTOXICATING LIQUORS—*Prohibition Act—Constitutional Law—Fourteenth Amendment.*—The prohibition act (Acts 1916, page 215), as to the transportation of liquor, does not violate the fourteenth amendment of the Constitution of the United States, in that it discriminates between corporation carriers and individuals who are carriers. The provision is not intended as a discrimination in favor of corporations who are common carriers, but as a restriction equally applicable to all desirous to transport ardent spirits. All persons without discrimination are privileged to use the corporation common carriers for the transportation of certain limited quantities of liquor, and all are equally restrained, so that no discrimination exists.

8. DOCUMENTARY EVIDENCE—*Letters as Evidence—Identification.*—

110

The accused sought to introduce two letters, in order to support his claim that he had secured employment in North Carolina and was on his way to accept it at the time he was arrested.

*Held:* That the court properly refused to admit these letters in evidence, because they were in no way identified as genuine.

9. INTOXICATING LIQUORS—*Prohibition Act—Transporting Liquor—Interstate Commerce—Burden of Proof.*—Accused was charged with transporting or bringing into the State intoxicating liquor in violation of the prohibition act. His defense was that he was engaged in interstate commerce and transporting the liquor upon a continuous journey from Washington, D. C., to a point in North Carolina. The facts relied on by the Commonwealth were admitted, and this was his only defense, which, under these circumstances, he was called upon to sustain the burden of proving. The court, at the request of accused, instructed the jury that if they believed from the evidence that the accused intended to make, and was making, a continuous journey from a point without the State through the State to another point without the State, it could not find him guilty, but amended the instruction by adding that, "when the ardent spirits in excess of one quart were found in the possession of the accused, the burden of proving the above statements as facts was thrown upon the accused."

*Held:* That this addition by the court to the requested instruction did not, as claimed by the accused, relieve the Commonwealth of proving the offense charged, and was not error, although in this instruction it might be said to be surplusage.

10. CRIMINAL LAW—*Instructions—Invited Error.*—Where accused in a requested instruction introduced unnecessary matter not essential to the defense relied on and with reference to which the Commonwealth had introduced no evidence, he cannot complain that the court inadvertently allowed it to remain therein.

11. INTOXICATING LIQUORS—*Prohibition Act—Constitutional Law—Personal Use.*—The State has plenary power to prohibit the importation of ardent spirits into the State for personal use or any other purpose.

12. APPEAL AND ERROR—*Conclusiveness of Verdict.*—Upon a charge of transporting or bringing into the State liquor in violation of the prohibition act, where the defense is that the transportation was interstate commerce, the jury has the right to discredit the testimony of accused, and the issue having been fairly submitted to them, their verdict will not be disturbed upon appeal.

Error to a judgment of the Hustings Court of the city of Richmond.

*Affirmed.*

The opinion states the case.

*Alfred E. Cohen* and *L. O. Wendenburg,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leon M. Bazile,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused was convicted under the prohibition law (Acts 1916, page 215) of unlawfully transporting ardent spirits in the State of Virginia. The first count of the indictment charges him with bringing more than one quart of ardent spirits into the State from a point without to a point within this State for use within the State; the second count charges him with unlawfully bringing into the State from a point without the State to a point within this State more than one quart of ardent spirits within a period of thirty days; and the third count with unlawfully transporting ardent spirits from one point to another within this State.

Upon his arraignment, he demurred to the indictment and each count thereof, which demurrer was overruled by the court; and this is assigned as error. It is sufficient to say, as to this assignment, that under section 39 of the act above referred to, the indictment is sufficient. *Pine and Scott* v. *Commonwealth,* 121 Va. 812, 93 S. E. 653; *Commonwealth* v. *Hill,* 5 Gratt. (46 Va.) 682, 687; *Hendricks* v. *Commonwealth,* 75 Va. 934, 943; *Devine* v. *Commonwealth,* 107

Va. 860, 60 S. E. 37, 13 Ann. Cas. 361; *State* v. *Miller,* 24 Conn. 522; *Tefft* v. *Commonwealth,* 8 Leigh (35 Va.) 721; *Taylor* v. *Commonwealth,* 20 Gratt. (61 Va.) 825;'*Dull* v. *Commonwealth,* 25 Gratt. (66 Va.) 965; *Whitlock* v. *Commonwealth,* 89 Va. 337, 15 S. E. 893; *Benton* v. *Commonwealth,* 91 Va. 782, 793, 21 S. E. 495.

Before the accused was arraigned, he petitioned the court to restore to him the suit case and the ardent spirits contained therein, which were taken from him by the policemen upon his arrest; a motion to like effect was made at the trial before the jury were sworn; and again, while the Commonwealth was introducing its evidence in chief, he objected to introduction of the evidence that the suit case contained such ardent spirits.

The question raised has been frequently considered, and the overwhelming weight of authority sustains the admissibility of such evidence. In 35 Cyc. 1271-2, citing many authorities, this is said: "It is well settled that a person legally arrested and in the custody of the law on a criminal charge may be subject to a personal search and examination, even though against his will, for evidence as to his criminality, and, if found, it may be seized without violating his constitutional rights. And if any person, even by illegal seizure, procure possession of any article, instrument, or document, the State may, notwithstanding such illegal seizure, use it, if necessary, as legitimate evidence against the person from whom it was so obtained to convict him of a crime, or upon an investigation against such person before a grand jury, it being an established rule that the court can take no notice of how such evidence was obtained, whether originating from a legal or an illegal source."

In 8 R. C. L. 196, this is said: "While it is true that the search of a defendant without legal justification is a trespass and an indictable misdemeanor, there is no principle or theory upon which the State may be deprived of the right

to employ the evidence of a criminal offense thus obtained. The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant is not within the scope of the remedy, or the measure of redress." Citing *Shields* v. *State,* 104 Ala. 35, 16 So. 85, 53 Am. St. Rep. 17; *State* v. *Turner,* 82 Kan. 787, 109 Pac. 654, 136 Am. St. Rep. 129, and note, 32 L. R. A. (N. S.) 772; *Commonwealth* v. *Tucker,* 189 Mass. 457, 76 N. E. 127, 7 L. R. A. (N. S.) 1056; *People* v. *Adams,* 176 N. Y. 351, 68 N. E. 636, 98 Am. St. Rep. 675, 63 L. R. A. 406; *Cohn* v. *State,* 120 Tenn. 61, 109 S. W. 1149, 15 Ann. Cas. 1201, and note, 17 L. R. A. (N. S.) 451; *State* v. *Slamon,* 73 Vt. 212, 50 Atl. 1097, 87 Am. St. Rep. 711; Note 59 L. R. A. 470; *State* v. *Edwards,* 51 W. Va. 220, 41 S. E. 429, 59 L. R. A. 465; Note 87 Am. St. Rep. 714; *State* v. *Sutter,* 71 W. Va. 371, 76 S. E. 811, 43 L. R. A. (N. S.) 399.

Counsel for the accused relies upon the case of *Weeks* v. *United States,* 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. 341, L. R. A. 1915 B, 834, Ann. Cas. 1915 C, 1177, as authority for the contrary view. Even if it were, it would be opposed to the overwhelming weight of authority. So far, however, from sustaining the proposition contended for, the contrary doctrine is expressly recognized in this paragraph of the opinion: "What then is the present case? Before answering that inquiry specifically, it may be well, by a process of exclusion, to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused, when legally arrested, to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. 1 Bish. on Cr. Proc., sec. 211; Wharton, Cr. Pl. & Pr. (8th ed.), sec. 60; *Dillon* v. *O'Brien & Davis,* 16 Cox, C. C. 245; Ir. L. R. 20 C. L. 300; 7 Am. Cr. Rep. 66. Nor is it the case of testimony offered at a trial where the court is asked to stop and

consider the illegal means by which proofs, otherwise competent, were obtained—of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused." What the court did hold in that case was, that under the fourth amendment of the United States Constitution, upon seasonable application by the accused for the return of his letters and private documents, seized in his house during his absence by a United States marshal holding no warrant for his arrest and none for the search of his premises, they should be returned to him and could not be used against him in the criminal prosecution; and the opinion concludes with this: "We, therefore, reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States acting under color of his office, in direct violation of the constitutional rights of the defendant; that having made seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed. As to the papers and property seized by the policemen, it does not appear that they acted under any claim of Federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the Federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the fourth amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal government and its agencies." Citing *Boyd's Case,* 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. 514.

The court itself then expressly limits the application of the case to the Federal government and its agencies, and expressly disclaims any purpose to impair or disapprove the established doctrine that evidences of crime found in the possession of the prisoner, or upon his person, may be used in prosecution against him, whether obtained from him legally or illegally.

The case of *Town of Blacksburg* v. *Beam,* 104 S. C. 146, 88 S. E. 441, L. R. A. 1916-E, 714, is also relied on. It is sufficient to say as to this case, that the evidence there was obtained from the defendant's private room by search made in his absence before the warrant for his arrest had been issued and without a search warrant, and therefore differs from the case at bar in which the suit case found in the possession of the prisoner was not opened until after the warrant charging him with the crime had been issued and the accused arrested.

The facts of this case are, that the accused was arrested at 2:05 A. M. on February 1, 1917, by two police officers of the city of Richmond, at Elba station. He had arrived upon an Atlantic Coast Line train from Washington, D. C., which was going south, and had in his hand a suit case. One of the policemen accused him of having whiskey therein. The accused replied that the suit case did not belong to him, and told the officers that he came from Washington and was on his way to North Carolina. Later he told the officers that he was going to his room at Twenty-fourth and Main streets, Richmond, to get his clothes, and would take an early morning train for the South. He also explained his stopping at Richmond by saying that he found out that that train would not take him to Townsville, N. C., where he desired to go, and that he would have to take a 6:35 A. M. Seaboard Air Line train from Richmond in order to get to that place, and gave this as one of the reasons why he left the train in Richmond. After having first said that

he had no whiskey, he was then arrested and admitted that he had whiskey in the suit case. After the warrant charging him with transporting whiskey illegally had been issued, his suit case was opened by the officers and found to contain fourteen quarts of whiskey and one quart of Italian bitters. It appeared that the accused had lived in Richmond a good many years, but he claimed that he had obtained work with a friend of his, giving his name, who was in the confectionary business at Townsville, N. C.

The evidence, then, is clearly sufficient, unless he was upon an interstate journey transporting the whiskey from Washington, D. C., to Townsville, N. C., to convict him of the violation of the statute forbidding the transportation of more than one quart of liquor in this State in personal baggage. Section 39, prohibition act.

Another contention is that the act is unconstitutional, in that the offense is not embraced within the title, which reads: "An act to define ardent spirits and to prohibit the manufacture, use, sale, offering for sale, transportation for sale, keeping for sale, and giving away of ardent spirits as herein defined, except as provided herein; to prohibit advertisement of such ardent spirits; to prescribe the jurisdiction for trial and appeals of cases arising under this act; to prescribe the force and effect of certain evidence and prosecutions for violation of this act; to create the office of commissioner of prohibition and to define his duties and powers and compensation; defining intoxication and who is a person of intemperate habits within the meaning of this act; prescribing certain rules of evidence in certain prosecutions under this act; exempting certain counties and cities from certain provisions of this act and authorizing additional restrictions and limitations beyond the provisions of this act as to sale, manufacture or delivery of ardent spirits in certain counties and cities; to provide for the enforcement of this act and to prescribe penalties for

the violation of this act; to appropriate out of the treasury of the State necessary moneys for the enforcement of this act; and to repeal all acts or parts of acts in conflict with this act."

It is sufficient to say that this title clearly indicates the general purpose of the act to prohibit the manufacture, use, sale, transportation for sale and giving away of ardent spirits. The transportation for sale is by the act absolutely prohibited, while transportation for private use in limited quantities is expressly permitted. It is perfectly well settled in this State that although a statute refers to many things of a diverse nature, the title will be sufficient if the subordinate provisions of the statute may be fairly regarded as in furtherance of and as facilitating the accomplishment of the general object expressed in the title. The constitutional inhibition was not intended to hinder remedial legislation, nor to prevent the incorporation in a single act of the entire statutory law upon one general subject, as this act does. There should be a liberal construction of the title so as to uphold the statute if practicable. All of its provisions against the transportation of liquor are congruous and germane to the title, and the methods devised for the accomplishment of its general purpose. So this court has decided in refusing to grant a writ of error in the case of *W. H. Wiley* v. *Commonwealth,* from the Corporation Court of the city of Lynchburg, and in *Burton* v. *Commonwealth, ante* 847, 94 S. E. 923, this day decided. *Wilburn* v. *Raines,* 111 Va. 339, 68 S. E. 993; *Commonwealth* v. *Willcox,* 111 Va. 849, 69 S. E. 1027; *Dist. Road Board* v. *Spillman,* 117 Va. 201, 84 S. E. 103; *Commonwealth* v. *Chesapeake & Ohio R. Co.,* 118 Va. 267, 87 S. E. 622.

The suggestion that the act violates the fourteenth amendment of the Constitution of the United States, in so far as it discriminates between corporation carriers and individuals who are carriers is not supported by any authority,

111

and it seems sufficient to say as to this that the provision is not intended as a discrimination in favor of corporations who are common carriers, but as a restriction equally applicable to all desirous to transport ardent spirits. All persons without discrimination are privileged to use the corporation common carriers for the transportation of certain limited quantities of liquor, and all are equally restrained, so that no discrimination exists.

The accused sought to introduce two letters, written in Henderson, N. C., from one Abert Macchi, in order to support his claim that he had secured employment in North Carolina and was on his way to accept it at the time he was arrested. The court properly refused to admit these letters in evidence, because they were in no way identified as genuine.

This brings us to the instructions.

An instruction was offered by the accused in these words: "The court instructs the jury that if they believe from the evidence that the accused transported ardent spirits from a point without this State to the city of Richmond, in his personal baggage; that the accused intended to make, and at the time of his arrest was making a continuous journey from a point without this State through this State to another point without this State; that the ardent spirits so transported or carried by him were not intended for use within this State, and not in fact sold or offered for sale, dispensed, given away or used in any manner prohibited by law in the city of Richmond, then the jury should find the accused not guilty." This instruction was amended by the court by adding immediately after the words "city of Richmond," in the latter part·of the instruction, the words, "or intended so to be," and after the words "not guilty," this language: "but when the ardent spirits in excess of one quart are found in the possession of the accused, the burden of proving the above statements as facts is thrown upon the accused."

It is admitted that under the circumstances of this case the accused was called upon to sustain the burden of proving his affirmative defense, that he was engaged in interstate commerce and transporting the liquor upon a continuous journey from Washington, D. C., to a point in North Carolina. The facts relied on by the Commonwealth were admitted, and this was his only defense. It will be noted, however, that in the instruction which he offered he included the other matters which are now complained of—that is to say, the instruction offered by him referred to matters not relied on nor proved by the Commonwealth, such as whether or not the ardent spirits were intended for use in this State, and that they were not sold or offered for sale, dispensed, or given away in any manner prohibited by law in the city of Richmond. These matters were not essential to the defense he relied on, nor had the Commonwealth introduced any evidence with reference thereto. Having introduced this unnecessary matter in his own instruction, he cannot now complain that the court inadvertently allowed it to remain therein. The jury were properly instructed that as to his defense the burden was upon him, and the language added by the court in no improper way weakens the instruction offered by him. The question is argued as though the court had told the jury that the possession of more than one quart of ardent spirits was *prima facie* evidence of guilt. This is true under another section of the statute referring to the possession of more than one quart of liquor in the home upon prosecutions for illegal sales of liquor. This, however, was not the section in view when the addendum was made by the court. This addendum refers to section 39 of the statute under which he was prosecuted, which forbids a traveler from carrying in excess of one quart of liquor in his personal baggage, for the *bona fide* use of himself or his family, and was intended to call the attention of

the jury to the fact that the possession of more than one quart in the personal baggage of a' traveler (unless transported through the State in interstate commerce) was a violation of the law. This too may be said to be surplusage in this instruction. At the same time, it does not improperly weaken the force of the previous part of his instruction, which was intended by him to emphasize his defense to the jury that he was protected by the commerce clause of the United States Constitution. That the burden was upon him as to this affirmative defense, as above stated, is perfectly clear, and the instruction as finally given does not put any greater burden upon him. It did not, as claimed by the accused, relieve the Commonwealth of proving the offense charged, and instructions Nos. 2 and 3, given by the court at the same time, clearly and distinctly told the jury that he must be proven guilty beyond every reasonable doubt, and in express terms that they "cannot find the accused guilty in this case, if, after a fair consideration of all of the evidence, both for the Commonwealth and for the defense, they have a reasonable doubt, based upon such evidence, of the guilt of the accused of the offense charged in the indictment, or in either count thereof, or of any element necessary to constitute the offense."

The accused asked the court to instruct the jury that if they believed that the ardent spirits were brought into the State by the accused for his own personal use, and not for manufacture or sale, they should find the prisoner not guilty. This instruction is based upon the assertion that the State lacks power to prohibit the transportation of ardent spirits into this State for personal use and not for manufacture or sale, and the question is argued with great force and vigor. It is sufficient to say as to this, that recent cases decided by the Supreme Court of the United States make it clear and fully determine that the State has plenary power to prohibit the importation of ardent

spirits into the State for any purpose.    *Clark Distilling Co.* v. *Western Maryland R. Co.*, 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; *Crane* v. *Campbell*, 245 U. S. 304, 38 Sup. Ct. 98; Adv. Sheets, No. 3, Jany. 1, 1918, p. 95.    The question may be regarded as definitely settled by these cases.

It is manifest that while the defense of the accused, if sustained by proper proof and credited by the jury, was a perfect defense (for the transportation occurred before the recent prohibition by Congress of the interstate transportation of ardent spirits into States which prohibit its manufacture), still the jury had the right to discredit his testimony, and the issue having been fairly submitted to them, their verdict, under the statute, comes to us as upon a demurrer to the evidence, and the judgment must, therefore, be affirmed.

*Affirmed.*