# Richmond.

ELLINGER v. COMMONWEALTH.

DECEMBER 10, 1903.

Absent, Buchanan, J.*

1. CONSTITUTIONAL LAW—*Act Broader than Title—Case in Judgment—
   Fox Island.*—An act of Assembly approved February 26, 1894, is
   entitled "An act to define and establish by straight lines the low-
   watermark lines for the riparian owner of the shores of Fox
   Island, or Fox Islands, in the county of Accomac, State of Virginia."
   The body of the act submits to arbitration a controversy as to the
   ownership of certain oyster lands, appoints the arbitrator, pre-
   scribes the terms of the award, states where it shall be recorded,
   and what its effect shall be.

   *Held*: The act is broader than its title, and, being in contravention
   of section 15, of Article V., of the Constitution of this State (1869),
   is null and void.

2. CONSTITUTIONAL LAW—*Titles of Acts—Liberal Construction.*—The
   Constitution is to be liberally construed in determining whether
   an act is broader than its title, and the act is to be upheld if practi-
   cable, but if the act embraces more than one object while its title
   embraces but one, the courts have no discretion in the matter.
   The Constitution in such cases is imperative, and must be obeyed.
   The title of an act, however, is sufficient if what is authorized by
   the act may be fairly regarded as in furtherance of the object
   expressed in its title.

3. CONSTITUTIONAL LAW—*Acquiescence by State in Unconstitutional
   Law.*—An unconstitutional act of Assembly is void, and confers
   no rights which can, by acquiescence on the part of the State,
   bind it.

Appeal from a decree pronounced by the Circuit Court of

*Judge Buchanan was detained at home by sickness.

Accomac county in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*Meredith & Cocke* and *J. H. Fletcher, Jr.,* for the appellant.

*Attorney-General William A. Anderson,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The object of the bill in this case is to annul the action of Fish Commissioner J. W. Bowdoin, who, proceeding under an act approved February 26, 1894, entitled "An act to define and establish by straight lines the low watermark lines for the riparian owner of the shores of Fox Island, or Fox Islands, in the county of Accomac, State of Virginia" (Acts of Assembly, 1893-'4, p. 469), executed a paper which is as follows:

"In consideration of the perpetual cession by William Ellinger of all of his low watermark area outside of the red line or lines traced on this plat to the Commonwealth of Virginia, for the specific purpose of planting or propagating oysters thereon, and no other, the Commonwealth of Virginia perpetually cedes to William Ellinger, his heirs or assigns, all the area embraced between the red line or lines and the blue line or lines as traced on this plat, for the specific purpose of planting or propagating oysters thereon and no other."

Whatever authority the Fish Commissioner was clothed with in respect to the matter in controversy was derived from the statute, the title of which has been given.

On March 4, 1895, Ellinger wrote to the Fish Commissioner a letter, informing him that he was the owner of Fox Island, or Fox Islands, mentioned in the act, and requested that proper steps be taken for the re-establishment of the original lines of

survey of Fox Island, and the assignment to him of a number of acres of water area beyond those limits equal in amount to the acreage furnished to the Fish Commissioner by the Coast Survey Department. This the Fish Commissioner declined to do, and, thereupon, Ellinger applied to the Court of Appeals for a writ of *mandamus.* In this litigation the Attorney-General appeared for the Commonwealth, and the court being of opinion that the second section of the Act of the General Assembly, approved February 26, 1894, referred to in the petition, imposes upon the Fish Commissioner duties discretionary and judicial in their nature, denied the writ.

In the following June, after the denial of the writ of *mandamus,* the instrument which is the subject of attack in this proceeding, was executed by the Fish Commissioner. This grant, or concession, of exclusive right to Ellinger was soon thereafter made the subject of inquiry in the General Assembly, and, on March 4, 1896, a resolution was adopted by both houses, which, after referring to the Act of February 26, 1894, to define and establish by straight lines the low watermark lines for the riparian owner of Fox Island, or Fox Islands, and reciting that "whereas a survey was made and lines established, by which it does not appear that the aforesaid act has been properly complied with according to its true intent and meaning, or with due and proper observance of the interests of the State," a joint committee is appointed "to investigate into the facts pertaining to said survey and the establishing of the lines aforesaid, and report as to what further action should be taken in the premises." Acts of Assembly 1895-'6, p. 773.

By an act approved February 9, 1898 (Acts 1897-'8, p. 281), the report of the Committee thus appointed was made the subject of legislation, and the Attorney-General was directed to institute all necessary legal proceedings in the name of the Commonwealth to recover from William Ellinger "whatever part of the State's domain which may be held by him without lawful au-

thority," and on the third Monday in January, 1899, this suit was instituted in the Circuit Court of Accomac.

The title of the Act of February 26, 1894, embraces but one object, which is "to define and establish by straight lines the low watermark lines for the riparian owner of Fox Island, or Fox Islands, in the county of Accomac. . . ." Is that title sufficiently broad to cover the powers conferred by the act in question, by which not only were the lines in contemplation defined, but the Fish Commissioner was granted powers not incident to his office, and the controversy between Ellinger and the Commonwealth was submitted to him for a decision, which resulted in the award of June, 1895, by which "the area embraced between the red line, or lines, and the blue line, or lines, as traced on this plat, for the specific purpose of planting or propagating oysters thereon" was assigned to William Ellinger? It thus appears that the caption to an act to define and establish the boundaries of Fox Island, which is the property of William Ellinger, is followed by legislation which submits a controversy to arbitration, appoints the arbitrator, prescribes the terms of the award, states where it shall be recorded, and what its effect shall be.

We cannot think that the title to this act is a compliance with section 15, Article 5 of the Constitution, (1869). It is true that the Constitution is, in this respect, to be liberally construed and the law upheld, if practicable, but if the act embraces more than one object while the title to the act embraces but one, the courts have no discretion in the matter. The Constitution in such case is imperative and must be obeyed.

The subject was very fully considered by this court in Iverson Brown's case, 91. Va. 762, 21 S. E. 357, 28 L. R. A. 110, and Judge Riely, in delivering the opinion, uses the following language:

"The provision of the Constitution is a wise and wholesome

one. Its purpose is apparent. It was to prevent the members of the Legislature and the people from being misled by the title of a law. It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together in one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation.

"And, on the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of separate acts on a single subject. Although the act or statute authorizes many things of a diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. It is, therefore, to be liberally construed and treated, so as to uphold the law, if practicable."

In that case the law was upheld, for while there were many acts of a diverse nature provided for in the statute, they were regarded as in furtherance of the object expressed in the title, and the conclusion was reached, that all that is required is that "the subjects embraced in the statute, but not specified in the title, are congruous, and have natural connection with, or are germane to, the subject expressed in the title."

To the same effect is the case of *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490, in which the constitutionality of an act to provide for a special election in the county of Pulaski as to the removal of the courthouse was called in question, and although as a means to the end and in furtherance of the object had in contemplation by the act, numerous steps were to be taken, the law was upheld upon the principle that they were in furtherance of the object expressed in the title.

The caption to the act under consideration is not broad enough, in our judgment, to cover its provisions. It seems to be clearly within the mischief which the constitutional provision was designed to prevent. We do not intend to say that the title was adopted as a means of deception and as a cover for vicious legislation, but it is plain that the provisions of the act are wholly diverse and dissimilar in their nature, have no necessary connection with each other, and that the title gave no intimation of the power conferred by the act, by virtue of which the Commonwealth has been divested of important rights which she held for the benefit of all of her citizens. Members of the Legislature might well have voted for an act to define and establish by straight lines the low watermark lines for the riparian owner of Fox Island, who would have been slow to submit a controversy to the arbitrament of the Fish Commissioner of such consequence to their constituents. But, however that may be, no imagination, however lively, could have discovered from the simple caption to this act that it introduced a carefully-prepared statute, creating the elaborate machinery for which it provides, and which results in taking from the State and vesting in appellant many hundreds of acres of water area suitable for the planting and propagating of oysters. We are of opinion that in passing the act under consideration the Legislature disregarded the plain mandate of the Constitution, and that, as a consequence, the act is null and void.

It is suggested that the State has acquiesced in or ratified, or is in some way morally bound by, what was done. The Legislature, it is true, to a large extent represents the Commonwealth, but it does so in subordination to the Constitution of the State. It can do nothing which that instrument prohibits and, in what is confided to it, must conform in its mode of action to the requirements of the Constitution. If it transcends its power, or if it acts in contravention of the Constitution, its acts are void; they confer no rights and bind no man, and all the

world is charged with notice of the limitations which the Constitution imposes. But, even if it were not so, if it be that the State can be charged by reason of acquiescence in or ratification of, the unauthorized acts of its agent, there is nothing in this record by which the State can be so compromised, for from the recital of facts at the beginning of this opinion it sufficiently appears that the State was energetic in discovering and prompt to disavow the whole course of procedure by which she was divested of her rights.

If, relying upon the act approved February 26, 1894, Ellinger has in good faith expended money, it may be that he has some ground upon which to appeal to the General Assembly to be reimbursed, but upon that aspect of the case we are not sufficiently advised to entertain an opinion, and it would be beyond our province in any event to give expression to it. The General Assembly, with full knowledge of all the attending circumstances, will doubtless do whatever good faith and fair dealing shall dictate.

We are of opinion that the case must be affirmed.

*Affirmed.*